**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 24th day of March, 2014.**



_____
Robert D. Berger
United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

| | |
|---|---|
| **CONVENIENCE XPRESS, INC.,**<br>      Debtor. | Case No. 10-20052-7 |

In re:

| | |
|---|---|
| **CONVENIENCE USA, L.P.,** | Case No. 10-20053-7 |

_____

| | |
|---|---|
| **ERIC C. RAJALA, CHAPTER 7 TRUSTEE,**<br>      Plaintiff, | |
| v. | Adv. Nos. 11-6263; 11-6264<br>Consolidated Case No. 11-6263 |
| **WILLIAM MARTIN, JR., MIKE BOYS,<br>and M&W MIDWEST PROPERTIES, LLC,**<br>      Defendants. | |

_____

### ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on the motion for summary judgment of Plaintiff Eric C.

Rajala, Chapter 7 Trustee.[1] The Trustee appears by his attorney, Stephen G. Mirakian of Wyrsch Hobbs Mirakian, P.C., Kansas City, Missouri. The Defendant William Martin, Jr., appears by his attorneys, Jeffrey A. Deines and Shane J. McCall of Lentz Clark Deines, P.A., Overland Park, Kansas. Defendant Mike Boys appears by his attorney, James S. Willard, Topeka, Kansas. M&W Midwest Properties appears *pro se*. After reviewing the pleadings and considering the Trustee's arguments, the Court is prepared to rule.

The Trustee of the bankruptcy estates of Debtors Convenience Xpress, Inc. ("Convenience Xpress"), and Convenience USA, L.P. ("Convenience USA"), sued Defendants William Martin, Jr., Howard "Mike" Boys, and M&W Midwest Properties ("M&W") to recover allegedly fraudulently transferred property under 11 U.S.C. § 548 and § 544 and preferential transfers under § 547.[2] Identical adversaries were filed stemming from the bankruptcy cases of both Convenience entities, and the adversaries were consolidated as companion cases under case number 11-6263. Defendant Martin thereafter filed his own chapter 7 bankruptcy petition, staying further action against him personally. Defendant M&W, however, entered into an agreed journal entry of judgment with the Trustee, agreeing to forego litigation of Plaintiff's complaint and agreeing to a judgment against it of $600,000.

The Trustee has now filed his motion for summary judgment against Defendant Boys, arguing that he is entitled to avoid the transfer of Convenience assets to M&W in July 2008 under § 548(a)(1)(B)(i) and (ii)(I) and under § 544(b)(1). The Trustee did not move for summary

---

[1] Doc. 55.

[2] All future statutory references are to the Bankruptcy Code ("Code"), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101-1532, unless otherwise specifically noted.

judgment on his § 547 preferential transfer claim. Boys did not file a response to the Trustee's motion; the Trustee's motion is unopposed. For the reasons set forth in more detail below, the Trustee's motion is denied. The parties will submit a final pretrial order within 45 days from the entry of this order; at that time an evidentiary hearing will be scheduled.

**I.     Background and Findings of Fact**[3]

Debtor Convenience Xpress is the general partner of Debtor Convenience USA.[4] Defendant Boys, since 2003, has been a 50 percent shareholder of Convenience Xpress; Defendant Martin owned the other 50 percent. Boys and Martin were the sole shareholders, officers, and directors of Convenience Xpress, although Martin handled the day-to-day operations of the company. The offices of Convenience Xpress, Convenience USA, and Defendant M&W were all in the same location, and Defendant Martin was the president of all three companies.[5] An employee of Convenience USA (who reported directly to Martin) was responsible for much of the day-to-day business of that company; the Convenience Xpress company itself had no employees, no bank accounts, and no assets--it apparently existed solely

---

[3] The Trustee's motion for summary judgment states 28 "undisputed or incontrovertible facts," with citations to the record. The citations given, however, often do not support the "fact" stated, and many are apparently incorrect. The Court has attempted to compile the facts with the information given that was correctly supported or from facts that could be readily found in the record provided.

[4] Although never stated in the Trustee's motion, the Court has gleaned from the record that the Convenience entities and M&W operated in the fuel supply and convenience/gas store business.

[5] The Trustee's motion for summary judgment, statement of fact number 2, states that Martin and Boys were the sole members of M&W for the relevant time period. The record citation, however, does not support this fact and instead expressly denies it. This is an example of the Trustee's alleged uncontroverted facts not being not supported by his record citations.

- 3 -

14.03.24 Rajala v Martin SJ Order.wpd

as the holding company of Convenience USA.

In July 2007, M&W purchased two properties from Convenience USA and then leased the properties back to Convenience USA. In order to make this purchase, M&W borrowed approximately $700,000 and both Martin and Boys personally guaranteed repayment of this loan. By the end of 2007, Convenience USA's liabilities exceeded its assets, leaving it with a negative net equity.

The situation did not improve in early 2008. In January and February 2008, Convenience USA suffered further losses due to level expenses but decreasing sales. Boys attended a March 8, 2008, stockholder meeting for Convenience USA and received copies of the Convenience USA profit and loss statements and a treasurer's report. By the end of May 2008, Convenience USA's assets totaled only $240,468.13. Convenience USA also had a $300,000 letter of credit. Convenience USA was consistently losing money on an annual basis. Despite this, during May and June 2008, Convenience USA obtained approximately $1.4 million worth of fuel products from two creditors: Growmark and Sinclair Oil.

Mr. Boys was aware that Convenience USA owed money for fuel purchases from Sinclair Oil and that it could not pay the amount due. Boys would not have authorized a payment draft, knowing that the funds were not available for payment. As of June 12, 2008, Boys knew that Convenience USA owed approximately $700,000 to suppliers. Mr. Martin testified in his deposition that when Convenience USA was purchasing product from suppliers like Sinclair Oil and Growmark in early 2008, he did not think anybody was going to pay for the product

- 4 -

14.03.24 Rajala v Martin SJ Order.wpd

Case 11-06263    Doc# 59    Filed 03/24/14    Page 4 of 13

"because it was too far gone."[6] Martin knew Convenience USA was in trouble in early 2008, which is when it made the fuel purchases. Convenience USA attempted payment to Sinclair Oil throughout early June 2008, but approximately $900,000 in payments from Convenience USA were returned as having been drawn on insufficient funds.

As of June 2008, Convenience USA also owed money to M&W for past-due rent payments for the buildings Convenience USA leased from M&W. By letter dated June 2, 2008, Boys, on behalf of M&W, made demand upon Convenience USA for payment of past due rent and informed Convenience USA that unless rent were paid by July 1, M&W would assume control of all Convenience USA facilities, including inventory at such locations.

Sinclair Oil officially notified Martin and Convenience Xpress that Convenience USA was in default of the parties' distributorship agreement on June 5, 2008, and made demand for payment. Also on June 5, Martin sent a letter to all Convenience USA partners informing them that drafts to fuel suppliers were not going to clear and that when that happened, the fuel supply would be cut off. Martin's letter stated:

> At that point we will no longer be able to **service our debt** and everything goes down hill from that point. . . .The assets that Convenience USA LP presently have, [sic] will automatically go to the bank to cover loans. If the loans and drafts, that are currently due, [sic] cannot be covered, **it will be** necessary **to file for bankruptcy of** Convenience USA LP. (Emphasis in original.)[7]

Convenience USA made no rent payments to M&W and, based on the joint decision of Martin and Boys, M&W took over Convenience USA's operations on July 2, 2008 (except for

---

[6] Doc. 55, Ex. B, at 12 (Deposition of William Mace Martin, Jr., in Case No. 08 CV 07017 in the District Court of Johnson County, Kansas, captioned "Sinclair Oil Corporation v. Convenience, USA, L.P., et al., 44:23).

[7] Doc. 55, Ex. L, at 3.

14.03.24 Rajala v Martin SJ Order.wpd

one store in Plainville, Kansas). From that point, all of Convenience USA's revenue from business operations was received by M&W. M&W stopped taking Sinclair Oil credit cards, even though M&W was still selling under the Sinclair sign and logos. (If a Sinclair Oil credit card were accepted, the payment would have gone directly to Sinclair Oil, rather than to M&W.) The primary purpose of Convenience USA transferring all of its inventory and operation income to M&W was so that M&W did not default on its debt obligations, which would have also resulted in both Martin and Boys having their personal guarantees on those debts enforced. Martin and Boys prevented default on the M&W debt, and the personal guarantees were not called. Neither Sinclair Oil nor Growmark, however, received payment on the debt owed to them, despite Convenience USA having approximately $2.2 million in fuel sales from June through August 2008. Further, although M&W assumed the income and inventory of Convenience USA, it did not assume Convenience USA's debt obligations. As of July 3, 2008, after application of a line of credit, Convenience USA owed Growmark approximately $324,000. Sinclair Oil also applied its line of credit, and Convenience USA owed Sinclair Oil approximately $500,000.

In January 2010, Debtors Convenience Xpress and Convenience USA filed chapter 7 bankruptcy petitions, each listing more than $1.25 million in debt. As stated above, the Trustee then filed the adversary complaints at issue herein.

**II.    Analysis**

    **A.    Standard for Motion for Summary Judgment**

An adversary proceeding to determine, avoid, or recover fraudulent conveyances is a core proceeding under 28 U.S.C. § 157(b)(2)(H) over which this Court may exercise subject matter

- 6 -

14.03.24 Rajala v Martin SJ Order.wpd

Case 11-06263    Doc# 59    Filed 03/24/14    Page 6 of 13

jurisdiction.[8]

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.[9] The moving party bears the initial burden of demonstrating--by reference to pleadings, depositions, answers to interrogatories, admissions, and affidavits--the absence of genuine issues of material fact.[10] In making this determination, the Court draws all reasonable inferences in favor of the non-moving party.[11]

This standard is "somewhat modified in an unopposed motion for summary judgment,"[12] which is the case herein. "It is improper to grant a motion for summary judgment simply because it is unopposed."[13] Rather, the court must be "certain that the uncontroverted facts as established by the unopposed motion for summary judgment reveal no undisclosed factual dispute and constitute a sufficient legal basis for this court to grant plaintiffs [sic] judgment as a matter of law."[14]

The Trustee bears the burden of proof to establish each element of his claim under

---

[8] 28 U.S.C. § 157(b)(1) and § 1334(b).

[9] FED. R. CIV. P. 56(a); FED. R. BANKR. P. 7056.

[10] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[11] *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 34 (10th Cir. 2013).

[12] *Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1163 (D. Kan. 2006).

[13] *E.E.O.C. v. Lady Baltimore Foods, Inc.*, 643 F. Supp. 406, 407 (D. Kan. 1986).

[14] *Id.*

- 7 -

§ 548.[15] The Trustee also bears the burden to establish fraud by clear and convincing evidence to support his § 544(b) claim.[16]

    **B.**    **§ 548(a)(1)(B)(i) and (ii)(I)**

The Trustee seeks to avoid the transfer of the Convenience assets to M&W in July 2008 under § 548(a)(1)(B)(i) and (ii)(I). Those statutory subsections state:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
> . . .
>     (B)    (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
>             (ii)(I) was insolvent on the date that such transfer was made . . ., or became insolvent as a result of such transfer . . . .

To summarize the statute, under this subsection, the Trustee must, therefore, prove: (1) a transfer of an interest of the Convenience entities in property; (2) the transfer was made or incurred within two years before the date of the bankruptcy petition of the Convenience entities; (3) the Convenience entities received less than a reasonably equivalent value in exchange for the transfer; and (4) the Convenience entities were insolvent either on the date the transfer was made or became insolvent as a result of the transfer.

This Court need spend no more time on this claim than Trustee's counsel did on the motion for summary judgment--which is to say, almost none. First as to Convenience Xpress, the

---

[15] *See Zubrod v. Keffer (In re Keffer)*, Case No. BAP WY-03-071, 2004 WL 632875, at *2 (B.A.P. 10th Cir. Mar. 26, 2004) (noting that the trustee has the burden of proof for reasonably equivalent value and constructive fraud avoidance claims under § 548).

[16] *Gaddis v. Allison*, 234 B.R. 805, 811 (D. Kan. 1999).

14.03.24 Rajala v Martin SJ Order.wpd

Trustee has set forth no facts showing that Convenience Xpress transferred an interest in property to M&W in any way, and the Trustee's claim therefore necessarily fails at the very first step of the multi-element § 548 claim. Second, as to Convenience USA, although the Trustee has detailed the transfer of the Convenience USA assets to M&W on July 2, 2008, and therefore addresses steps one and two of the § 548 claim, the Trustee makes no effort to show that Convenience USA received less than reasonably equivalent value in exchange for the transfer;[17] that Convenience USA was insolvent when the transfer was made; or that Convenience USA became insolvent as a result of the transfer.[18] As a result, the Trustee fails to show that he is

---

[17] The Trustee barely mentions reasonably equivalent value and certainly makes no reasoned argument on the subject.

Although the Bankruptcy Code does not define the phrase "reasonably equivalent value," there is law on the subject. Section 548(d)(2)(A) defines the term "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but [it] does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." The Supreme Court addressed the phrase "reasonably equivalent value" in *BFP v. Resolution Trust Co.*, and stated that the question of reasonably equivalent value asks "whether the debtor has received value that is substantially comparable to the worth of the transferred property . . . ." 511 U.S. 531, 548 (1994). The Court also stated that reasonably equivalent value typically has a meaning similar to "fair market value." *Id.* at 545. Comparing transfers to antecedent debt is one method of assessing reasonably equivalent value. *See, e.g.*, *Jobin v. McKay (In re M&L Bus. Mach. Co.)*, 84 F.3d 1330, 1340–41 (10th Cir. 1996) (concluding debtor received reasonably equivalent value because of a reduction of a claim for restitution, due to the debtor owing antecedent debt at the time the transfer arose to reduce the claim).

[18] Regarding insolvency, the Trustee makes statements relating to insolvency in his statement of facts, but never makes a legal argument regarding insolvency. And again, insolvency must be established with reference to the applicable law. *See, e.g.*, § 101(32)(A) (stating the definition of "insolvent" as "the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of-- (i) property transferred, concealed, or removed with intent to hinder, delay or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522 of this title"); *see also Sherman v. Rose (In re Sherman)*, Case No. 00-8052, 2001 WL 997946, at *3 (10th Cir. 2001) (discussing approaches to measuring solvency); *Stillwater Nat'l Bank & Trust v. Kirtley (In re Solomon)*, 299 B.R. 626, 628–39 (B.A.P. 10th Cir. 2003) (same).

entitled to judgment as a matter of law on his claim under § 548(a)(1)(B)(i) and (ii)(I). The Trustee's motion for summary judgment must, therefore, be denied on this claim.

### C. § 544(b)(1)

The Trustee also seeks summary judgment on his claim under § 544(b)(1), which states that a "trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." The Trustee argues that the transfer from Convenience USA to M&W is avoidable in Kansas under the Kansas Uniform Fraudulent Transfer Act ("UFTA"), K.S.A. § 33-102. The Kansas UFTA states:

> Every gift, grant or conveyance of lands, tenements, hereditaments, rents, goods or chattels, and every bond, judgment or execution, made or obtained with intent to hinder, delay or defraud creditors of their just and lawful debts or damages, or to defraud or to deceive the person or persons who shall purchase such lands, tenements, hereditaments, rents, goods or chattels, shall be deemed utterly void and of no effect.

Essentially, the Trustee argues that the transfer from Convenience USA to M&W was a fraudulent conveyance under the UFTA, that the transfer was therefore void under Kansas law, and because of that, the Trustee can avoid the transfer under § 544(b)(1).

To state a claim for fraudulent conveyance, the Trustee must prove two elements: "first, an intent on the part of the grantor to hinder, delay or defraud his creditors and second, the participation of the grantee in such fraudulent scheme or such knowledge on the latter's part of facts and circumstances as would import knowledge of the fraud to him."[19] Because direct

---

[19] *City of Ark. City v. Anderson*, 243 Kan. 627, 632 (Kan. 1988) (internal quotation marks omitted).

- 10 -

14.03.24 Rajala v Martin SJ Order.wpd

evidence of fraud is "not always available," fraud may also be established by circumstantial evidence and the particular conduct of the parties, details of the transaction at issue, and the totality of the surrounding circumstances.[20] The Kansas Supreme Court recognizes six "badges" or indicia of fraud to aid in this determination:

> (1) a relationship between the grantor and grantee; (2) the grantee's knowledge of litigation against the grantor; (3) insolvency of the grantor; (4) a belief on the grantee's part that the contract was the grantor's last asset subject to a Kansas execution; (5) inadequacy of consideration; and (6) consummation of the transaction contrary to normal business procedures.[21]

The badges are not intended to be exclusive.[22]

There is no direct evidence presented in this case: the Trustee has shown no uncontroverted facts that establish the actual intent by Convenience USA to defraud or the intent of M&W to engage or participate in fraud. The Trustee argues circumstantial evidence—the badges of fraud—however, to prove his case. The Trustee first points out that Convenience USA had no reasonable ability to pay for more than $1,000,000 of fuel products from Sinclair Oil and Growmark. Boys and Martin also knew that approximately $900,000 had been rejected by Sinclair Oil for insufficient funds. Convenience USA then transferred all of its assets to M&W, including all income and inventory. The Trustee argues that these facts show a close relationship between the grantor and grantee, the insolvency of the grantor, a transfer of the "last assets" of the grantor, and an intent to hinder and delay creditors from obtaining payment on debts.

---

[20] *Gaddis v. Allison*, 234 B.R. 805, 811 (D. Kan. 1999).

[21] *Credit Union of Am. v. Myers*, 234 Kan. 773, 778 (Kan. 1984) (citing *Polk v. Polk*, 210 Kan. 107, 110 (Kan. 1972)).

[22] *Koch Eng'g Co. v. Faulconer*, 239 Kan. 101, 105, 716 P.2d 180, 185 (Kan. 1986).

Further, the Trustee argues that the fact that Boys and Martin were personal guarantors of the debt of M&W shows that the purpose of the transfer was to protect Boys and Martin, rather than a normal business transaction.

The Trustee's motion fails on his § 544(b)(1) claim as well. Starting again with the Trustee's claim related to Convenience Xpress, there was no transfer made by Convenience Xpress in the Trustee's facts, so there is no possible cause of action under § 544(b)(1) related to Convenience Xpress. As to Convenience USA, although the Trustee has shown facts that could potentially support his claim against M&W, the Trustee has made no effort to pinpoint Boys' liability as separate and distinct from M&W. Essentially, the Trustee must impute the transfer that was made from Convenience USA to M&W personally to Boys, and he has made no effort to do so. Although the Trustee points out that Boys was the 50 percent shareholder of Convenience Xpress, which was the general partner of Convenience USA, and alleges that Boys was also a 50 percent member of M&W,[23] he makes no argument as to how or why the corporate veil of M&W should be pierced as to Boys.[24] In addition, the Trustee never alleges that Boys personally received any transfer of funds from either Convenience entity. As a result, the Trustee has again failed to establish that he is entitled to judgment as a matter of law against Boys under § 544(b)(1).

---

[23] This alleged fact was not supported by the Trustee's record citation.

[24] Generally, in Kansas, the corporate form is presumed to be separate and distinct from individual members, and to disregard the corporate form and impose liability on individuals, a court must consider a multi-factor test. *See, e.g.*, *Parks v. Anderson*, 406 B.R. 79, 95-96 (D. Kan. 2009) (discussing alter ego doctrine and general rules of law related thereto). The Court states no position as to whether the Trustee could establish these elements, just that he has not attempted to do so with this motion for summary judgment.

## III. Conclusion

For the reasons set forth above, the Court finds that Plaintiff has not met his burden to support his motion for summary judgment, and as a result, the motion must be denied. The parties will submit a final pretrial order within 45 days from the entry of this order; an evidentiary hearing will then be scheduled.

**It is, therefore, by the Court ordered** that the motion for summary judgment[25] is denied.

IT IS SO ORDERED.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS

---

[25] Doc. 55.